UNITED STATES of America

v.

**William L. DeLOACH, Jr., a/k/a Bill Zockman, Appellant.**

**UNITED STATES of America,**

v.

**Ralph HOLLAND, Appellant.**

**Nos. 80–1091, 80–1103.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1980.

Decided Dec. 4, 1980.

---

Michael S. Frisch, Washington, D. C., (trial counsel, appointed by this court), for appellant DeLoach.

Alex Kozinski, Washington, D. C., (appointed by this court), for appellant Holland.

Benjamin B. Sendor, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Steven C. Tabackman, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before TAMM and MacKINNON, Circuit Judges, and JOHN H. PRATT,* United States District Judge for the District of Columbia.

Opinion for the court filed by District Judge JOHN H. PRATT.

Concurring opinion filed by Circuit Judge TAMM.

JOHN H. PRATT, District Judge:

Appellants, co-defendants below, were convicted of violating 18 U.S.C. § 1001 (1976) by submitting a false application for the labor certification of an alien.[1] Their

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. 18 U.S.C. § 1001 provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly or willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious, or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The statements in question here were within the jurisdiction of the Department of Labor under § 212(a)(14) of the Immigration and Naturalization Act of 1952. 8 U.S.C. § 1182(a)(14) (1976).

consolidated appeals raise three issues: first, whether venue was proper in the District of Columbia; second, whether the trial judge erred in admitting "bad acts" testimony against Holland; and third, whether testimony concerning a third person's statement should have been admitted over hearsay objections. For the reasons stated below, we affirm both convictions.

*FACTS*

In early 1978, Ralph Holland met an Iranian national by the name of Hossein Goodarzi, and for the sum of $350, promised to find Goodarzi a job and to help obtain the necessary labor certification. Between the autumn of 1977 and the autumn of 1978, Holland made similar promises to three other aliens in exchange for various sums of money. Contrary to his promises, Holland found them neither jobs nor certifications, and returned none of their money.

Holland met with Goodarzi several times, and on August 31, 1978, they submitted an application for Goodarzi's alien labor certification, Form MA 7–50 B, to the D.C. Department of Labor (DCDL). Holland had arranged with William DeLoach, a friend and purported auto mechanic, to act as the prospective employer. DeLoach completed the form under the alias of William Zockman, the proprietor of Bill's Auto Repair Service, supposedly located at 2677 Douglass Place, S. E., Washington, D.C., the address of DeLoach's apartment. The defendants stipulated that both of them had helped complete the form: both men's fingerprints were found on it, DeLoach signed it, and Holland arranged for it to be typed.

The DCDL soon returned the application because it did not include a copy of the required newspaper advertisement for the job in question, the results of such advertising, and instructions to the DCDL concerning interviews for possible American applicants for the jobs. Federal regulations require that the alien's prospective employer advertise for American workers to fill the position, and to hold the job open for a month to permit Americans to compete for the post.[2] The application was resubmitted

with some of the missing materials in late November, 1978. DeLoach and Holland later sent in copies of the advertisements they ran in the Washington Post, together with information about two fictitious American job applicants who had been "rejected" as unqualified.

On December 21, 1978, the DCDL sent an American applicant, Robert Williams, to interview for the job. Not surprisingly, Williams was unable to find the shop at its listed address. He called the Department, and stated that he had asked around and "No one had heard of Bill's Auto Repair Service." DeLoach later explained to the DCDL that he had listed his home address (where he supposedly did the firm's paperwork) and gave another address, this one on First Street, N.E., where the garage was supposed to be located. He also drew a map of the shop's location. After further unsuccessful efforts to contact DeLoach for an interview, Williams gave up.

In mid-January 1979, the DCDL forwarded the application to the U.S. Department of Labor's Regional Office in Philadelphia for certification. The application was referred for criminal investigation which soon revealed the nonexistence of the firm in question, as well as the phantom applicants who had supposedly been rejected.

After a jury trial, appellants were convicted on two counts of making material false statements in a matter within the jurisdiction of a United States agency, in violation of 18 U.S.C. § 1001. The false statements in question concerned the existence of the prospective employer, and facts about his business; about the existence of a job opening; and about the company's supposed efforts to secure American applicants for the job.

*PROPER VENUE*

Appellants object to the venue of their trial, even though they were tried in the district in which DeLoach and most of the witnesses reside, and where the acts leading up to the offense actually occurred. Appel-

2. 20 C.F.R. § 656.21 (1979).

lants suffered none of the harms—distant trial and hostile jury—that the Framers of the Sixth Amendment were seeking to prevent. Nonetheless, Holland and DeLoach argue that despite the additional expense, inconvenience, and potential prejudice associated with distant venue, this court should extend the ruling in *Travis v. United States*[3] to overturn their convictions. This we decline to do.

The *Travis* case involved the prosecution of a labor leader for filing a false non-communist affidavit with the National Labor Relations Board in Washington, D.C. This filing violated § 9(h) of the National Labor Relations Act,[4] and 18 U.S.C. § 1001. The United States prosecuted Travis in Colorado, where he lived, and where he prepared and mailed the false affidavit. The government relied on 18 U.S.C. § 3237(a) to lay venue in Colorado, arguing that filing of this affidavit constituted a continuing offense, making venue proper both in Colorado and in the District of Columbia.[5]

The court disagreed, ruling that venue was proper only in the District of Columbia, where the filing occurred, because no federal jurisdiction attached until the affidavit was actually received by the Board.[6] Congress, the court found, intended the filing of these affidavits to be an essential prerequisite for the exercise of *any* federal jurisdiction under the National Labor Relations Act; "[t]he filings [were] conditions precedent to a union's use of the Board's procedures."[7] Given this statutory scheme, and the possibilities of loss in or retrieval from the mails, the court read § 9(h) of the NLRA as restricting venue under § 3237(a) to the place where the affidavit was ultimately filed.[8]

Thus, contrary to appellants' assertions here, the court adopted a case-by-case approach and analyzed the relevant statutory scheme;[9] it did not pronounce a flat rule restricting venue in false statement cases to the place where federal authorities received the statement. Absent a showing that Congress intended federal jurisdiction and venue to be so restricted, four circuit courts of appeal have rejected the board reading of *Travis* urged by appellants here.[10]

To hold as appellant suggests would be to say that every defendant whose forms are filed in [another district] must defend in [that district] despite the fact that the more convenient and logical forum would be in the district where defendant resides, works, and where his witnesses can be found. Such a result, in the absence

---

3. 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

4. Section 9(h) of the National Labor Relations Act, as amended by the Taft-Hartley Act, 61 Stat. 136, 146 (1947), and further amended by the Act of Oct. 22, 1951, § 1(d), 65 Stat. 601, 602 (1951). Section 9(h) was repealed in 1959 by the Labor Management Reporting and Disclosure Act of 1959 (Landrum-Griffin Act), 73 Stat. 519, 525 (1959).

5. Section 3237(a) provides:

Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prose-

cuted in any district from, through or into which such commerce or mail matter moves.

6. 364 U.S. 631, 635–36, 81 S.Ct. 358, 361, 5 L.Ed.2d 340.

7. *Id.* at 635, 81 S.Ct. at 361.

8. *Id.* at 636, 81 S.Ct. at 361.

9. *Id.* at 635, 81 S.Ct. at 361.

10. *United States v. Herberman*, 583 F.2d 222 (5th Cir. 1978) (§ 1001 prosecution for false medicare claims); *Candella v. United States*, 487 F.2d 1223 (2d Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974) (§ 1001 prosecution for fraudulent claims in HUD relocation program); *Ruehrup v. United States*, 333 F.2d 641 (7th Cir.), *cert. denied*, 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177 (1964) (§ 1014 prosecution for fraudulent loan application; *Imperial Meat Co. v. United States*, 316 F.2d 435, 440 (10th Cir. 1963) (§ 1001 prosecution for false invoices concerning meat supplied the Army).

of a specific mandate from Congress, would be undesirable.[11]

In the present case, appellants argue neither from the legislative history nor the statutory scheme, but from federal regulations implementing the Immigration and Naturalization Act of 1952.[12] These regulations, it is argued, restrict federal jurisdiction to those false statements actually filed with the Regional Offices of the Department of Labor. With jurisdiction so restricted, venue should be restricted to the district in which the Regional Office is located.

Neither the regulations' language nor the Federal Register notices announcing them support this construction.[13] The rules state simply that if possible fraud or willful misrepresentations are discovered "prior to" certification, the certifying officer shall refer the matter to the Immigration and Naturalization Service for investigation.[14] Moreover, if an application is the subject of a criminal indictment or information, the processing shall be halted until final disposition of the charges.[15] Thus, the regulations contemplate possible investigation and prosecution before an application ever reaches the Regional Office. Therefore, jurisdiction exists to prosecute in both the district where the application is submitted to the state agency (in this case the DCDL) and in the district in which the Regional Office is located, and venue for the prosecution is proper in both districts.

■ Considerations of federalism and practicality support the decision that venue lies in both districts. This case, unlike *Travis*, involves a program administered con-

currently by the D.C. and federal governments. Federal offenses involving such programs will often relate to conduct violating state law, in this case possible fraud. Where Congress by statute and the Executive by regulation have chosen to give states a role in such a program, these choices favor trial in the affected state of federal offenses involving that program. Laying venue in this fashion would permit more rapid disposition of related state charges, allow more convenient trial in many cases, and permit sentencing judges more opportunity to consider the propriety of concurrent sentences.

## BAD ACTS TESTIMONY

Three government witnesses, all aliens, testified that Ralph Holland was a swindler, who took their money for false promises to find them jobs and labor certifications.[16] The trial judge admitted the testimony over timely objection on the theory that it would establish a common scheme or plan,[17] a plan, the government argues here, of "increasing sophistication to defraud aliens seeking labor certifications."[18] According to the United States, making false statements to government agencies was a recognizable feature of that scheme and its increasing sophistication.[19] The government also argues that this testimony was admissible to negate the possibility that Holland had helped prepare the forms by mistake or without knowledge of their falsity.[20]

Holland argues that the introduction of evidence concerning possible swindles violates Rule 404(b) of the Federal Rules of Evidence, which prohibits introduction of

---

11. *Herberman v. United States*, 583 F.2d 222, 227 (5th Cir. 1978).

12. 8 U.S.C. § 1101, *et seq.* (1976); 20 C.F.R. § 656.31 (1979).

13. 42 Fed.Reg. 3441 (1977) (promulgation); 41 Fed.Reg. 48938 (1976) (proposal).

14. 20 C.F.R. § 656.31(a) (1979).

15. 20 C.F.R. § 656.31(b) (1979).

16. Besides Hossein Goodarzi, three aliens—Andargch Belachew, an Ethiopian, Ajaib Singh Toor, an Indian, and Majib Karbassiashar, an

Iranian—all testified to paying or lending Holland substantial sums of money. Belachew paid $150 (Tr. 55); Toor paid $300, and lent another $200 (Tr. 65, 67); Karbassiashar paid $500 (Tr. 78).

17. Tr. 29–31.

18. Government Brief at 32.

19. *Id.* at 31.

20. *Id.* at 32–35.

evidence of a defendant's bad acts "in order to show that he acted in conformity therewith." [21] This evidence is not admissible under the common plan exception, he argues, because he was not charged with obtaining money under false pretenses, but with making false statements to a government agency. The objected to testimony did not concern such false statements.[22] Moreover, he argues, the testimony has no relevance to knowledge or intent since he had promised these other aliens that "everything would be legal." [23] Finally, Holland argues that Rule 403 required the exclusion of the testimony because its probativeness was outweighed by its prejudicial value.

We shall consider the arguments under Rule 404(b) and Rule 403 separately.

### A. *Exclusion Under Rule 404(b)*

The United States introduced substantial testimony showing that Holland failed to repay the aliens their money or obtain jobs and certifications. The prosecutor argued this evidence to the jury in his opening and closing statements, contending that this evidence permitted the jury to infer Holland's intent to make the false statements charged. The trial judge instructed the jury that in considering evidence that Holland received money from the aliens and promised to obtain employment for them, they should remember that:

> This evidence was admitted only for your consideration as to whether it showed or tended to show (a) that the defendant Holland had the intent to commit the offense for which he is now on trial, (b) . . . had a motive to commit the offense

for which he is now on trial, (c) . . . did not commit the offense for which he is now on trial accidentally or by mistake, and (d) . . . had a scheme or plan which included the offense for which he is now on trial.[24]

Much of the aliens' testimony on these matters is relevant and unobjectionable, and the trial judge properly instructed the jury in its use. Holland's dealings with the three aliens were relevant to show how he met Goodarzi,[25] to show his familiarity with the certification process, and to show one other instance of a false statement made to a government agency in connection with these transactions.[26] Holland does not challenge the admission of this testimony, and does not take issue with the judge's instruction.

Appellant does challenge the testimony concerning whether Holland *repaid* the three aliens besides Goodarzi, in other words, whether he swindled them. He contends that his testimony was legally irrelevant and highly damaging.

Evidence of these other swindles, the government argues, relates to the ultimate issue of intent, and the intermediate issues of knowledge, motive, common plan, and absence of mistake and accident.[27] Intent was the primary issue at Holland's trial; Holland's identity and the fact that he had helped prepare and submit the false statements were not disputed. Intent is legally relevant and falls within the enumerated exceptions to the rule.[28]

▮ Thus the real issue is the logical relevance of these other swindles to Hol-

---

**21.** Fed.R.Evid. 404(b).

**22.** Appellant does not contest the admission of testimony by Karbassiashar and other evidence that Holland submitted false statements to a Maryland employment office in connection with Karbassiashar's application. App. Brief at 12 n. 8.

**23.** Tr. 77.

**24.** Tr. 384.

**25.** Belachew introduced Toor to Holland, and Toor, in turn, introduced Goodarzi to Holland.

**26.** *See* note 22, *supra.*

**27.** The intent exception overlaps substantially with the exceptions for knowledge, motive, common plan, and absence of mistake and accident because the second stage of inference where evidence is offered under these other exceptions is to be the issue of intent. C. A. Wright & K. Graham, 22 Federal Practice and Procedure, 487, § 5242 (1978 ed.)

**28.** Fed.R.Evid. 404(b).

land's intentions in submitting the false statements to the Department of Labor. Evidence that Holland had repaid or attempted to repay Goodarzi would have been a strong indication that Holland had no intention to file false statements, that he was simply a good faith employment agent who made the mistake of relying upon De-Loach. Holland did raise the defense of mistake and contended that his failure to repay resulted from bankruptcy, not fraud. Evidence of the other swindles undercuts his defense of mistake, first by showing that his failure to repay in similar circumstances was intentional, and second, by showing that when he did have the opportunity to repay, he nonetheless kept the other aliens' money.[29] Where intent is the only real issue, as in this case, the government may fairly anticipate the defense of mistake and lack of knowledge and put this evidence in as part of its case in chief.[30]

We reject appellant's contention that these prior bad acts were so dissimilar that the only logical inference to be drawn from them is the forbidden one: that Holland was a bad person who swindled aliens and therefore was likely to attempt to deceive the government. The prior acts shown here were not offered and would not be admissible to show Holland's identity from a pattern of operations so distinctive that only he could have submitted the fraudulent forms in this fashion.[31] Neither were these acts introduced to show that these statements were false because Holland was a liar.

These prior acts were instead introduced to show intent. In this case, where intent was the only real issue, and where appellant predictably raised the defense of mistake, the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense and tend to rebut the defense of mistake. Three factors reinforce the admissibility of this evidence. First, where intent is the only real issue, there is less chance for confusion of the issues by the jury; far less similarity between the offenses charged and the bad acts evidence need be shown where the issue is intent instead of identity.[32] Second, and related, the court must consider the government's need for the evidence in making its case. On the issue of intent, which is far harder to prove by extrinsic evidence than Holland's identity or the falsity of the statements, the government's need for the evidence is correspondingly greater.[33] It should be noted that the evidence of these swindles was the primary rebuttal to Holland's defense of mistake. The third factor supporting admission here was the trial judge's limiting instruction, which properly restricted the jury's use of the evidence. We will not lightly assume that the jury violated its instructions.

Both Holland and the government argue several decisions of this court concerning admissibility under Rule 404(b).[34] These cases, like the case before us, turn largely on the particular facts; none is squarely in point here. In *United States v. Foskey*,[35] relied upon by appellant, the court ruled

29. Holland went into bankruptcy after he took money from Karbassiashar.

30. *United States v. Jardan*, 552 F.2d 216, 219 (8th Cir. 1977), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977).

31. *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir. 1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

32. *Id.; U. S. v. Riggins*, 539 F.2d 682 (9th Cir. 1976) (similarity of acts and offenses not necessary if similarity is not the basis for relevance).

33. *See C. A. Wright & K. Graham, supra*, n. 27, at 461, 466, § 5239 (federal courts most liberal

in admitting evidence under this rationale where intent is in issue).

34. Rule 404(b) provides that:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

35. *United States v. Foskey*, 636 F.2d 517 (D.C. Cir.1980).

that the government could not introduce evidence of an arrest for drug possession to prove intent in a similar offense two and a half years later, because Foskey had been released after that earlier arrest when his companion immediately claimed sole possession of the drugs and denied that Foskey knew anything about them. Foskey having *no* knowledge of the drugs, thus lacked the requisite intent. "Absent the linchpin element of intent in the prior incident, it lacks the necessary similarity and relevance to justify its admission under Rule 404(b)." [36]

In this case, there is consistent and reliable evidence that Holland's intent in the swindles of other aliens was the same as it was in his transactions with Goodarzi and the Department of Labor. Thus the *Foskey* decision does not control here.

The government argues from *United States v. Day*,[37] in which this court permitted the introduction of evidence of contemporaneous criminal acts to prove motive and intent. That case involved evidence of other crimes committed within two days before and after the crime charged. This case differs considerably, as it involves a series of discreet incidents over more than a year and a half period.

In both these cases, however, this court closely examined the evidence in question and its relation to the offense charged. The evidence in question here is relevant and admissible to rebut the defense of mistake and lack of intent.

### B. *Admissibility under Rule 403*

Appellant Holland contends that even if the testimony concerning his failure to repay these aliens was relevant and admissible under Rule 404(b), it should have been excluded under Rule 403 because its probative value was substantially outweighed by its unfairly prejudicial effects.

"[T]he balancing contemplated by Rule 403 is a matter within the sound discretion of the trial court and should be overturned on appeal only in cases of abuse of that discretion." [38] The aliens' testimony concerning Holland's failure to repay is reliable. The stories are consistent with each other and the facts are largely conceded by Holland. As discussed above,[39] the evidence was vital on the issues of intent and possible mistake. Although the possibility of unfair prejudice was real, the transcript shows that the district court made its decision to admit after argument on these issues,[40] and gave the jury a proper limiting instruction. Its probative value was very great because it was a part of the very transaction complained of and, as noted above, it was strongly probative of "intent [which] was the only real issue." Under the circumstances, we cannot say that the district court abused its discretion in concluding that the probative value outweighed its prejudicial effect.

### HEARSAY OBJECTIONS

Holland appeals the admission of testimony that he contends contained damaging double hearsay, hearsay contradicting defendant's assertions that DeLoach ran an auto repair service in his parking lot. The government contends that the statement was not hearsay, since it was not offered to prove the truth of matters asserted, but to show the effect of the statements upon the listener. Even if the statement was hearsay, the government argument continues, its admission was harmless error. We agree that admission of the testimony was harmless error, not warranting reversal.

Beverly Williams, who processed the labor certification application for the D.C. Department of Labor, gave the disputed testimony. She stated that she had sent Robert Williams, an American applicant, to

---

**36.** *Id.* at 524.

**37.** *United States v. Day*, 591 F.2d 861 (D.C.Cir. 1978).

**38.** *United States v. Foskey*, 636 F.2d 517, at 525 (D.C.Cir.1980); *Miller v. Poretsky*, 595 F.2d

780, (D.C.Cir.1978); *United States v. Day*, 591 F.2d 861, 878–79 (D.C.Cir.1978).

**39.** *United States v. Day*, 591 F.2d 861, 877–79 (D.C.Cir.1978).

**40.** Tr. 25–31.

interview for the purported job with Bill's Auto Repair Service. She testified that Mr. Williams:

>—called the local office and indicated that there was no such address.
>
>Mr. Keefe: [Hearsay Objection].
>
>COURT: Well, it is part of the same transaction, and I will admit it.
>
>WITNESS:—And he asked around and no one heard of Bill's Auto Repair Service.[41]

The United States contends that the testimony was merely offered to explain why Ms. Williams then called DeLoach to find out where the shop was located. The difficulty with this argument is that her call was adequately explained by her statement that Mr. Williams was unable to locate the address in question. There was no need to continue beyond that point.

The admission of this testimony did Holland no harm, however. Immediately after Ms. Williams gave her disputed testimony, she stated that she telephoned DeLoach to clear up the confusion about the address. DeLoach admitted to her that the garage was not located at the Douglass Street address, and gave her the First Street address of what turned out to be Mr. Davis' garage. Moreover, DeLoach himself testified that the garage was not located at the Douglass Street address, a fact confirmed by Robert McQueen's testimony concerning his investigation of the application for the Immigration and Naturalization Service. Thus the jury had before it statements from three other sources—McQueen, DeLoach's party admission reported by Ms. Williams, and DeLoach's own testimony at trial—concerning the non-existence of Bill's Auto Repair Service at the Douglass Street address. Under the circumstances, the admission of the hearsay statements concerning the non-existence of Bill's Auto Repair Service was harmless error.

## CONCLUSION

For the foregoing reasons, the verdicts in *United States v. DeLoach*, No. 80–1091 and in *United States v. Holland*, No. 80–1103 are

AFFIRMED.

TAMM, Circuit Judge, concurring:

I concur in the court's opinion affirming appellants' convictions. I find disturbing, however, the manner in which the prosecution presented the "bad acts" testimony challenged here by appellant Holland. Accordingly, I believe a brief note is required to aid the government in its future use of such evidence.

Rule 404(b) of the Federal Rules of Evidence is the product of a careful balancing of interests. On one hand, the rule seeks to protect the defendant from the danger that the admission of his "bad acts" may confuse the jury, leading it to premise its verdict upon an evaluation of his character rather than upon an assessment of the evidence relevant to the crime with which he is presently charged. To ensure that protection Rule 404(b) establishes a broad prohibition against the admission of such evidence. On the other hand, the rule recognizes that legitimate purposes may also be served by the admission of bad acts evidence. For that reason it sets forth certain limited purposes for which this evidence may be offered. Admission of evidence for one of these designated purposes does not mean, however, that the defendant's interest is no longer entitled to protection. Rather, proper admission of a defendant's bad acts requires that the evidence meet certain standards,[1] that the jury be informed adequately as to the limited purposes for which the evidence is introduced and for which it may be considered, and that the evidence be presented in a manner consistent with the

---

41. Tr. 125–26.

1. The "bad acts" evidence sought to be introduced must be relevant to a material issue that is not susceptible of proof by other probative evidence. *See United States v. Goodwin*, 492 F.2d 1141, 1150–51 (5th Cir. 1974); *United States v. Turquitt*, 557 F.2d 464, 468–69 (5th Cir. 1977). In addition, under the standard of Rule 403 the probative value of this evidence must outweigh its potential for prejudice. *See United States v. Foskey*, 636 F.2d 517, at 523 (D.C.Cir.1980).

interests sought to be served by the rule. *See generally United States v. Hernandez-Miranda*, 601 F.2d 1104, 1107–09 (9th Cir. 1979); *United States v. Day*, 591 F.2d 861 (D.C.Cir.1978); *United States v. Kirk*, 528 F.2d 1057, 1060–61 (5th Cir. 1976).

Appropriate deference to these interests requires the prosecution to conduct its presentation of such evidence in a manner likely to make clear to the jurors the limited purpose for which it is properly admissible. *See, e. g., United States v. Foskey*, 636 F.2d 517, at 524 n.6 (D.C.Cir.1980). By presenting this evidence in a way calculated to serve a proper, limited purpose, the danger of confusion and potential for undue prejudice are readily averted. The government's presentation of the bad acts testimony against appellant Holland does not reflect full appreciation of these responsibilities. The prosecution stated in its opening remarks that several aliens would testify that they had entrusted money to Holland for the purpose of obtaining a green card but had received neither the promised card nor the return of their money. No indication of the purpose of this testimony was given; the prosecution stated only that the evidence would show that these aliens had been "ripped off." Trial transcript (Tr.) at 37. On direct examination of the aliens, the prosecution asked each if he had ever been repaid the money he had given appellant Holland. Again, the prosecutor made no attempt to indicate either the direction of his questioning, or the limited nature of the purpose for which the testimony could be offered. Tr. at 52–83. In fact, only in closing argument—on rebuttal—did the prosecution explain to the jury that the bad acts testimony had been elicited for certain purposes, and even then it failed to explain the Rule 404(b) exception under which it was operating. Tr. at 366. Moreover, any confusion remaining in the jurors' minds as to the purpose of the aliens' testimony was compounded by the following statement, also made in the rebuttal portion of the prosecution's closing argument:

> Counsel says he [Holland] helped people— he found jobs for people. Well where are the people he helped. I didn't see any people he helped. I saw some people he hurt, though.
>
> I saw Majib who came in here and said he gave him five hundred dollars and who was going to go to work for the Morley Engineering Company—for a guy named David Morley. David Morley was Mr. Holland—Majib didn't know that. He didn't get anything for his five hundred dollars.
>
> Toor gave the man five hundred dollars and got nothing either. Goodarzi gave him three hundred and fifty and got nothing.
>
> Andargch Belachew gave him a hundred and fifty and got nothing.

Tr. at 365–366.

Rule 404(b) attempts to ensure that the jury's verdict is made upon the basis of relevant evidence. In this case the evidence which Holland challenges is relevant, indeed critical, to a material issue—that of intent. The manner in which the testimony was presented, however, was not directed toward its relevance to the crime charged. Instead, the prosecution's presentation tended to indicate that the jury could convict Holland on the basis of evidence that he is the type of person who defrauds aliens. This is precisely the inference that Rule 404(b) was intended to preclude. The fact that the trial court appropriately instructed the jury as to the limited purposes for which the challenged testimony could be considered does not relieve the government of its obligations in this regard. I suggest that in the future the prosecution's presentation of bad acts evidence reflect more clearly an awareness of these obligations.