UNITED STATES of America, Appellee,

v.

Kenneth MANNER, Appellant.

UNITED STATES of America, Appellee,

v.

Orlando LEEPER, Appellant.

Nos. 88–3169, 88–3170.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 26, 1989.
Decided Oct. 17, 1989.

Nicholas G. Karambelas, Washington, D.C. (Appointed by this Court), for appellant, Kenneth Manner in No. 88–3169.

Patrick M. Donahue, Washington, D.C. (Appointed by this Court), for appellant, Orlando R. Leeper in No. 88–3170.

Linda Mullen, Asst. U.S. Atty., Washington, D.C., for appellee in Nos. 88–3169 and 88–3170. Jay B. Stephens, U.S. Atty., John R. Fisher, Helen M. Bollwerk, Thomas J. Tourish, Jr., Elizabeth Trosman, Judith E. Retchin, and Erik P. Christian, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Kenneth Manner and Orlando Leeper, appellants in these consolidated criminal cases, were each convicted in United States District Court for the District of Columbia of one count of conspiring to distribute and to possess with intent to distribute cocaine,

21 U.S.C. §§ 841(a), 846 (1982), and one count of intentionally possessing with intent to distribute a substance containing cocaine base in a quantity exceeding fifty grams, 21 U.S.C. §§ 841(a), 841(b)(1)(A)(iii) (1982 & Supp. V 1987).[1] Their appeals challenge (1) the district court's admission of evidence of Leeper's illegal sale of crack to an undercover officer approximately ten weeks after the crimes with which Leeper and Manner are charged in this case; (2) the district court's denial of Manner's motion to sever his case from Leeper's; and (3) the district court's denial of Manner's motion to suppress the physical evidence of the cocaine that Manner, Leeper, and Kevin Jackson, who pled guilty before trial, were allegedly planning to distribute. On the first issue, we remand the record in Leeper's case to the district court for a balancing on the record of the probative value to Leeper and the prejudicial effect on Leeper of the evidence of his later crime. On the last two issues, we find that the district court acted within its discretion. Thus, while we uphold Manner's conviction, we retain jurisdiction in Leeper's case until the remand is complete.

## I. Factual Background

On March 4, 1988, Detective Richard Hinton of the Metropolitan Police Department ("MPD") was assigned to a roadblock constructed as part of Operation Clean Sweep in southeast Washington, D.C. Operation Clean Sweep was primarily a law enforcement operation designed to eradicate drug trafficking in the District of Columbia. To deter criminal behavior and unlicensed operation of motor vehicles, police asked the driver of each car coming to the roadblock for a driver's permit and car registration. Transcript of Motions Hearing (M. Tr.) at 13, 34 (May 13, 1988); Trial Transcript (Tr.) at 100–01. While Hinton was writing a traffic ticket at the roadblock, another officer directed Hinton's attention to a vehicle that was backing away from the roadblock at high speed in an apparently reckless fashion. Hinton rapidly maneuvered his cruiser to block in the vehicle, from which appellant Manner, the driver, and Kevin Jackson, the passenger, emerged. M. Tr. at 20–23; Tr. at 49–52. Manner talked loudly with his hands in his pockets, apparently instructing Jackson to run away. Tr. at 53, 195. When Manner failed to heed Hinton's order to take his hands out of his pockets and return to his vehicle, Hinton reached into his cruiser for his shotgun and radioed for assistance. M. Tr. at 24–26; Tr. at 54–56. At that point, Officers Chandler and Belcher of the MPD, who had also been manning the roadblock, arrived to assist Hinton. Tr. at 56, 104. Chandler and Hinton subdued Manner, who had been moving away from Hinton, and arrested him. M. Tr. at 28–30; Tr. at 105, 126–27.

While Jackson was exiting the passenger side in a crouched position, Hinton noticed that Jackson dropped on the ground a brown paper bag that contained "[s]omething blue protrud[ing] from the top." M. Tr. at 28. Chandler recovered the paper bag that Jackson had dropped, and saw that in it were smaller bags containing a substance he suspected to be cocaine. Tr. at 106. Hinton and Chandler then arrested Jackson as well. M. Tr. at 53. Upon investigation, the police found that the brown

---

1. 21 U.S.C. § 841(a) states:
   Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
   (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
   21 U.S.C. § 841(b)(1)(A)(iii) provides in relevant part:
   In case of a violation of subsection (a) of this section involving . . . 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . ., a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $4,000,000. . . .
   21 U.S.C. § 846 in effect at the time states:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

bag held 558 small packets, each containing a white rock substance that included cocaine base. Tr. at 106–09. Manner and Jackson were both arrested on charges of unlawful possession with intent to distribute a substance containing cocaine base in excess of fifty grams under 21 U.S.C. §§ 841(a), 841(b)(1)(A)(iii). On June 3, 1988, after the police fingerprint expert determined that the small bags also contained a fingerprint from Leeper, the police arrested Leeper on the same charge.

On June 9, 1988, Jackson formally pled guilty to the charge against him, which carries a 10–year–to–life sentence and a fine of up to $4 million. *See supra* note 1. The prosecution agreed that if Jackson provided "substantial assistance in the investigation or prosecution of another person," the government would consider moving to modify or reduce his sentence. Transcript of Plea Hearing at 7 (June 9, 1988). On June 14, 1988, a grand jury returned a superseding indictment alleging violations by Manner and Leeper of 21 U.S.C. §§ 841(a), 846 and 21 U.S.C. §§ 841(a), 841(b)(1)(A)(iii). Original Record on Appeal at 12.

Events on the days preceding the arrests of Manner and Jackson were disputed at trial. Jackson, a prosecution witness, testified to the following. On March 1, 1988, he had met Manner in New York, where Manner "cook[ed] up the cocaine free-base," apparently making it into crack. Tr. at 179. Jackson then drove with Manner and Leeper to the Bronx, where Manner and Leeper purchased drug paraphernalia that could be used to package the crack. Leeper, Jackson, and an unidentified woman then drove with the crack and the drug paraphernalia to Leeper's apartment in Suitland, Maryland. On March 2, Jackson and Leeper, together with Manner, who had arrived several hours later, packaged 1,000 bags of crack at Leeper's home and sold them in southeast Washington for $7,500 profit. Tr. at 182–88. On March 4, Leeper, Jackson, and Manner made up another 558 bags of crack, which they planned to sell in southeast Washington. That evening, the three men drove to southeast, with Manner and Jackson in one car and Leeper, following a different route, in another. Tr. at 192. On their way, Jackson and Manner encountered the roadblock and were arrested. Tr. at 193.

Jackson further explained that Manner was a "big man" in the drug world and that Leeper "was working for" Manner in New York. Thus, Manner "put[ ] out" money for drugs, but if he was unable to "make the pick-up" it would be up to his "next man" or "lieutenant"—Leeper—to do so. Tr. at 203–04, 213.

After Jackson testified, the prosecution called to the stand Detective Rene Dessin of the MPD. He testified that on May 25, 1988, while working as an undercover officer, he purchased from Leeper $20 worth of drugs that tested positive for cocaine. Leeper was arrested shortly thereafter. At trial, Dessin identified the drugs as crack cocaine. Tr. at 225–26. Dessin added that he knew nothing about the case on trial. Tr. at 231.

To discredit Jackson's testimony, Sabrena Thompson, Leeper's common-law wife, testified that in the week of February 29–March 4, 1988, Leeper was employed by a painting company. She stated that he worked every day from February 29 to March 3 and returned home each evening. She then testified that on March 4, Leeper's day off, she and Leeper ran errands and that Leeper did not leave her presence during the entire day. Tr. at 250–58. According to Thompson, Jackson had never been in the apartment where she and Leeper lived. Tr. at 258. Leeper also called to the stand Denise Thigpen, a cousin of Jackson's Washington girlfriend, who testified that she had frequently seen Jackson selling drugs in southeast Washington. Tr. at 270–73.

In rebuttal, the prosecution called Kevin Jackson's mother, who testified that Leeper and his wife met her at Union Station, Washington, D.C. after Jackson's arrest and gave her a bag belonging to Jackson. Tr. at 298–99. Desiree Kirkland, the mother of Jackson's son, testified that the last time she saw Jackson before his arrest was during his visit to her home in New York

on March 1, but that in the months prior to March 1 she had seen him nearly every day. Tr. at 292–94.

## II. EVIDENCE OF LEEPER'S LATER CRIME

### A. *Background Considerations*

■ Federal Rule of Evidence 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, evidence of a defendant's bad acts may be admissible if it is relevant to a material issue other than character, such as intent. *United States v. Foskey*, 636 F.2d 517, 523 (D.C.Cir.1980). In the context of Rule 404(b), "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).

Even if this evidence passes the relevancy threshold of Rule 404(b), however, it must still satisfy Rule 403, which states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

See *United States v. Moore*, 732 F.2d 983, 987–92 (D.C.Cir.1984); *United States v. James*, 555 F.2d 992, 998–99 & nn. 38, 42 (D.C.Cir.1977) (confirming applicability of Rule 403 to evidence considered relevant under Rule 404(b)). The framers of the Federal Rules of Evidence anticipated that Rule 403 concerns about prejudice, confusion, and waste of time would establish the primary threshold for admitting other act evidence already considered relevant under Rule 404(b). *Huddleston*, 108 S.Ct. at 1500 (quoting S.Rep. No. 93–1277, p. 25 (1974)

("[I]t is anticipated that with respect to permissible uses for such [other act] evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, *i.e.*, prejudice, confusion or waste of time.")).

Leeper contends that because the evidence of his later drug sale met neither the relevance standard of Rule 404(b) nor the probativeness standard of Rule 403, he was denied a fair trial. We consider these contentions in turn.

### B. *Leeper's Rule 404(b) Claim*

■ Leeper's primary defense was that Jackson's accomplice testimony was a complete fabrication. Leeper maintains that this defense, coupled with his offer at trial to stipulate or concede the issue of intent if the jury concluded that he committed the crimes charged, rendered intent a merely formal, nonmaterial issue in the case. Consequently, Leeper's argument goes, the trial court erred by admitting other crime evidence for the purpose of establishing intent. Brief for Appellant Orlando Leeper at 17–18.

We note at the outset that the prosecution carried its burden of identifying a legitimate purpose for which the bad act testimony could be used. *Moore*, 732 F.2d at 988. The government specified before trial that it would introduce this testimony to prove intent, as permitted by Rule 404(b). Government's Motion to Introduce Other Crimes Evidence, June 28, 1988, Original Record on Appeal at 16. It is plausible that Leeper's later crime sheds light on his intent in the instant case; arguably, his subsequent bad act increases the likelihood that he intended to distribute the cocaine bags on which his fingerprint appeared. Thus, the later bad act alleged "clearly relate[s] logically to the offense charged." *Moore*, 732 F.2d at 988. In addition, the closeness in time and fundamentally similar nature of the later sale to the crime charged underscores the relevance of the bad act evidence in Leeper's case. *See id.*

Leeper's contention that the trial court erred in admitting the other act evidence

relies heavily on *United States v. Mohel,* 604 F.2d 748 (2d Cir.1979), in which Mohel, the defendant, claimed that the key prosecution witness' testimony about an alleged cocaine sale by Mohel was a complete fabrication. From the pretrial conference through trial and summation, Mohel's counsel repeatedly offered to stipulate or concede knowledge and intent if the jury found that Mohel had in fact sold the cocaine. The Second Circuit held that "[s]uch an unequivocal offer of stipulation or concession serves to remove intent and knowledge as issues in the case." *Id.* at 753. Although the offer need not be written, the court stressed that it must be unequivocal. *Id.* at 753–54.

■ *Mohel,* however, is readily distinguishable from the instant case.[2] As Leeper's counsel admitted at trial, he had not offered explicitly in any pretrial hearings or motions to stipulate or concede the intent issue. Tr. at 7–9. Consistently with *Mohel,* the trial judge refused to "read between the lines" of Leeper's Motion in Limine to find an offer of stipulation or concession. Tr. at 8. Finally, unlike this case, *Mohel* did not involve a conspiracy charge, which increases the probativeness of Rule 404(b) evidence. *United States v. Sampol,* 636 F.2d 621, 659 n. 23 (D.C.Cir. 1980).

We conclude that the trial court properly found that the evidence of Leeper's subsequent drug sale was relevant to a determination of Leeper's intent, which remained an issue in the case. Thus, this evidence met the relevance standard of Rule 404(b).

### C. *Leeper's Rule 403 Claim*

Leeper contends that the trial court failed to balance the probative value of his later crime against its prejudicial effect and, as a result, admitted unduly prejudicial evidence. The prosecution replies that the evidence was not prejudicial and that the district court acted within its discretion to admit the evidence.

■ We review a trial court's Rule 403 determinations concerning other crime evidence for "grave abuse." *United States v. Payne,* 805 F.2d 1062, 1066 (D.C.Cir.1986). Since we examine whether the "probative value is *substantially* outweighed by the danger of *unfair* prejudice," *Moore,* 732 F.2d at 989 (quoting Rule 403 with emphasis provided by *United States v. Day,* 591 F.2d 861, 878 (D.C.Cir.1978)), we lean towards admitting evidence in close cases. *Payne,* 805 F.2d at 1066; *Moore,* 732 F.2d at 989. Although this balancing should occur on the record, "reversal or remand for failure to make such a balancing on the record is inappropriate, first, if defense counsel failed to request such balancing, or, second, if the considerations germane to balancing probative value versus prejudicial effect are readily apparent from the record." *United States v. Sutton,* 801 F.2d 1346, 1362 (D.C.Cir.1986) (citing *United States v. Lavelle,* 751 F.2d 1266, 1279 (D.C.Cir.), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985)).

■ We note first that Leeper's counsel specifically requested such an on-the-record balancing in this case but the trial judge

---

**2.** We note that the Second Circuit somewhat limited the scope of *Mohel* when it determined that a "bare stipulation" would not take intent out of a case in which the defendant offered "rather unusual theories" to explain the course of events. *United States v. Pedroza,* 750 F.2d 187, 201 (2d Cir.1984), *cert. denied sub nom. Pelaes v. United States,* 479 U.S. 842, 107 S.Ct. 151, 93 L.Ed.2d 92 (1986). We need not rely on *Pedroza,* however, because Leeper's offers of stipulation and concession were far less unequivocal than Mohel's. Although the circuits remain divided as to whether stipulations or concessions by the defense can take intent out of the case, those circuits that follow *Mohel's*

approach uniformly require that the defendant affirmatively take intent out of the case, generally by stipulation or concession. *See, e.g., United States v. Russo,* 717 F.2d 545, 552 (11th Cir.1983); *United States v. Roberts,* 619 F.2d 379, 383 (5th Cir.1980); *but see United States v. Chaimson,* 760 F.2d 798, 805 (7th Cir.1985) (evidence of extrinsic acts relevant to intent admissible when government must prove specific intent). *Mohel's* guidance as to the type of affirmative steps that are necessary indicates that Leeper's counsel, who failed to offer such a stipulation until the trial began, did not act in a sufficiently unequivocal or affirmative manner.

refused his request. Tr. at 16.[3] Next, we consider whether the judge's considerations in admitting the other crime evidence are "readily apparent from the record." Leeper's attorney moved *in limine* to exclude the evidence on the grounds that it would suggest to the jury that Leeper had a propensity for criminal behavior. Original Record on Appeal at 27. This motion was consistent with our concern that the similarity of other act evidence to the charged offense "increases the danger that the jury will confuse the issues necessary to convict the defendant." *Lavelle*, 751 F.2d at 1278. At the same time, however, the prosecution argued vigorously that the evidence of Leeper's other crime is relevant to his intent in the charged offenses in this case; as a result, the prosecution maintained, the probative value of that evidence outweighs its prejudicial effect. Original Record on Appeal at 16, 30. We have on other occasions found that other act testimony that helps to establish the defendant's intent passes muster under Rule 403. *Sutton*, 801 F.2d at 1360–62; *Moore*, 732 F.2d at 987–92.

This is a close case, however, not only because the prosecution and defense present forceful arguments for admitting or excluding the evidence, but also—and more importantly—because the prosecution's case against Leeper is substantially more tenuous than its case against Manner. Above all, Leeper was not present at the roadblock arrest of March 4. Aside from Leeper's fingerprint, Jackson's accomplice testimony, which is "inherently less reliable" than testimony of nonaccomplice witnesses, *United States v. Lee*, 506 F.2d 111, 118 (D.C.Cir.1974), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975), provided the bulk of the evidence that Leeper was involved with Manner and Jackson.[4] Leeper, moreover, offered an alibi that accounted for his behavior and whereabouts on March 1–4. In view of the leanness of the prosecution's case against Leeper, the evidence of Leeper's later drug sale may have had considerable effect in leading the jury to credit Jackson's testimony and to connect Leeper to the March 4 incident. Although the trial judge heard and read the relevant arguments, the considerations that ultimately led him to admit the bad act evidence against Leeper in the face of clear weaknesses in the prosecution's case are not "readily apparent from the record," *Sutton*, 801 F.2d at 1362. Absent some articulated balancing of the evidence's probative value and prejudicial effect, we cannot determine whether the trial judge properly exercised his discretion on this matter.

Consequently, we remand the record in Leeper's case to the district court for an on-the-record determination as to whether the prejudicial effect against Leeper of the evidence of his later crime outweighs its probative value and, if so, whether there is a reasonable possibility that this evidence affected the outcome of the case. We expect that the trial judge can readily make this determination without undue delay because he is cognizant of all of the relevant facts. We do not, however, intimate any suggested resolution of this issue. We will retain jurisdiction while he reaches his decision.[5] *See generally United States v. Rob-*

---

3. After the trial judge granted the government's motion to introduce evidence of Leeper's later crime, the following exchange occurred:

MR. DONAHUE [Leeper's counsel]: Can I have at least some of the Court's reasoning? I'm unclear.

THE COURT: One of the few advantages you have of being a judge is you get to ask the questions and not answer them, and I will stick with one of the few advantages I have sitting up here.

Tr. at 16. Later in the trial, again without an articulated Rule 403 balancing, the judge overruled defendants' objection to the introduction of evidence of Leeper's other crime. Tr. at 220–24.

4. Although we have held that uncorroborated accomplice testimony "may support a criminal conviction," *Robinson v. Cheney*, 876 F.2d 152, 158 (D.C.Cir.1989) (citing *Lee*, 506 F.2d at 118 & n. 18), in the criminal context particularly such testimony "should be treated with caution." *Robinson*, 876 F.2d at 152 (citing *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)).

5. The trial judge shall certify to us his findings and conclusions. We will then supplement the record in *United States v. Leeper* to include the on-the-record determination here prescribed and any further materials submitted by the parties to the district court. After such a filing, the

*inson,* 700 F.2d 205, 214 (5th Cir.1983), *cert. denied,* 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984). An order for remand is being issued simultaneously with this opinion.

## III. MANNER'S MOTION TO SEVER

Kenneth Manner argues on appeal that his right to a fair trial was unfairly prejudiced by the district court's denial of his motion to sever his case from Leeper's. Manner further contends that because his and Leeper's defenses were fundamentally different in character, the trial judge abused his discretion by not severing the two cases. We disagree with both claims.

### A. *General Considerations*

■ Rule 8(b) of the Federal Rules of Criminal Procedure authorizes joinder of two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14, however, states that the court "may ... grant" a severance "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants...." Rule 14 does not require us to reverse a denial of severance merely because a defendant "might have a better chance of acquittal if tried separately." *United States v. Wright,* 783 F.2d 1091, 1095 (D.C.Cir.1986) (quoting *United States v. Wilson,* 434 F.2d 494, 501 (D.C.Cir. 1970)). Rather, we need only determine whether the trial judge's failure to sever denied the movant a fair trial. *Wright,* 783 F.2d at 1095. In general, we strike a balance in favor of joint trials. *United States v. Leonard,* 494 F.2d 955, 965 (D.C.Cir. 1974) (quoting *United States v. Hines,* 455

F.2d 1317, 1334 (D.C.Cir.1971), *cert. denied,* 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972)). We review the trial court's denial of a severance motion under an abuse of discretion standard. *United States v. Tarantino,* 846 F.2d 1384, 1398 (D.C.Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988).

Severance may be required in two situations—when the evidence against one defendant is "far more damaging" than the evidence against the other, and when co-defendants rely on mutually contradictory defenses. *Id.* at 1398–99. We consider the two situations separately, since Manner presents an argument pursuant to each.

### B. *Presentation of Prejudicial Evidence*

■ When the evidence against one or more defendants is "far more damaging" than the evidence against another defendant, "the prejudicial spillover may have deprived a defendant of a fair trial." *Id.* at 1398. The danger is that the cumulation of evidence against all defendants "may lead the jury to be either confused or prejudiced in assessing the evidence against that particular defendant." *United States v. Butler,* 822 F.2d 1191, 1194 (D.C.Cir.1987). The trial judge is generally best able to evaluate the degree of prejudice, and jury instructions are usually sufficient to minimize any disparities in evidence. *Tarantino,* 846 F.2d at 1398.

The few cases in which we have overturned a trial court's denial of a motion to sever have involved clear disparities between the weight, quantity, or type of the evidence against the movant and against the other defendants. *See, e.g., Sampol,* 636 F.2d at 645–48; *United States v. Mardian,* 546 F.2d 973, 977–81 (D.C.Cir.1976).[6]

clerk of this court will set a schedule for supplementary briefing and the matter will be returned to this panel for disposition.

**6.** In *United States v. Gambrill,* 449 F.2d 1148 (D.C.Cir.1971), we disapproved of the trial judge's denial of a severance motion after the judge issued a jury instruction that evidence presented by one defendant's alibi witnesses was offered for that defendant alone and had no bearing on the other defendant, who had chosen

not to testify. *Id.* at 1160–63. *Gambrill* is readily distinguishable from the case before us, however, because in our case the trial judge issued no such jury instruction. In *Gambrill,* moreover, the defendant who had presented alibi testimony made the severance motion at issue on appeal. We also concluded that the district court did not abuse its discretion when it denied the nontestifying witness' severance motion. *Id.* at 1159–60.

Similarly, the Eleventh Circuit overturned a denial of a severance motion when the jury would have had to disbelieve the evidence presented by one codefendant in order to believe the evidence offered by another. *United States v. Gonzalez*, 804 F.2d 691, 695 (11th Cir.1986).

Manner contends that as to him, the evidence of Leeper's other crime was "wholly cumulative and utterly without any probative value whatsoever" and, as a result, "highly prejudicial." Brief for Appellant Kenneth Manner (Manner Br.) at 13. We reject this argument for several reasons. First, the case brought by the prosecution against Manner and Leeper "require[d] presentation of much of the same evidence, testimony of the same witnesses, and involve[d] two defendants who are charged, *inter alia,* with participating in the same illegal acts." *Sutton*, 801 F.2d at 1365. Testimony from Jackson, from several police officers, and from the fingerprint expert provided substantial evidence of Manner's and Leeper's guilt; only one element of the prosecution's case-in-chief—Detective Dessin's testimony about Leeper's later crack sale—bore on Leeper and not on Manner. *Compare Sampol*, 636 F.2d at 647 (vast bulk of evidence concerned crimes of other defendants and was, therefore, likely to be prejudicial). Given our strong policy in support of the joint trial of defendants indicted together, *Hines*, 455 F.2d at 1334, we find no undue risk, here, that the jury would unjustly impute Leeper's subsequent bad act to Manner. *See Tarantino*, 846 F.2d at 1399.

Second, the trial judge properly instructed the jury that they "must not consider ... in any way" with respect to Manner the evidence of Leeper's later drug sale. Tr. at

351. Manner contends that this instruction was unavailing since Jackson had testified that Leeper was the person "right next to" Manner. Tr at 213. According to Manner, the jury would inevitably and improperly infer that Manner directed Leeper's later drug sale. Manner Reply Br. at 3–4. Although Manner's argument is not unreasonable, the trial judge's jury instruction clearly informed the jury of the appropriate parameters of their consideration of the evidence of Leeper's subsequent bad act. This instruction provides further evidence that the trial judge did not abuse his discretion in admitting this evidence.[7]

Manner relies heavily on *United States v. Figueroa*, 618 F.2d 934 (2d Cir.1980), for his argument that he was unduly prejudiced by the court's admission of evidence of Leeper's subsequent crime. In *Figueroa*, the Second Circuit reversed the guilty verdict of two defendants on the grounds that the improperly admitted evidence of a third defendant's prior acts was unduly prejudicial to them. *Id.* at 947–48.[8] The court explained, however, that the case fell between two extremes. At one pole is the risk of prejudice that might arise if the jury "were simply to draw an adverse inference" because of the defendants' association with another defendant who had a prior criminal record. In that situation, the risk "seems too insubstantial in most circumstances to survive forceful instructions." *Id.* at 946. At the other extreme, a high risk of prejudice exists when the prior crime evidence against one defendant "prove[s] directly" or by "strong implication" that the co-defendants also participated in that prior criminal act. *Id.*

In contrast to *Figueroa*, which leaned towards the latter situation, the instant

---

**7.** The similarity of the evidence against Manner and Leeper, together with the judge's clear instruction, leaves us confident that the jury was able to compartmentalize the bad act evidence against Leeper and to prevent that evidence from unduly influencing its decision with regard to Manner. *Compare Sampol*, 636 F.2d at 647. Consequently, we believe it is proper for us to dispose of the Manner and Leeper cases separately and differently, upholding Manner's conviction, but remanding the record in Leeper's case. *See* Part V, *infra.*

**8.** *Figueroa* is relevant to our inquiry even though the bad acts of defendants there, unlike Leeper's bad act, occurred before the offense charged in the case. This distinction is unimportant for our purposes, however, because we have held that subsequent bad acts are admissible for their bearing on intent on prior occasions. *United States v. Gallo*, 543 F.2d 361, 365 (D.C.Cir.1976).

matter is much closer to the first scenario. Detective Dessin's testimony about Leeper's drug sale made no mention of Manner, and Jackson refused to describe Leeper as Manner's "small man." Tr. at 203. In addition, no other evidence linked Manner to Leeper's subsequent act, and the trial judge's jury instruction was forceful, if brief. Consequently, we conclude that the jury could have done no more than derive a slight and not unduly prejudicial adverse inference against Manner from the other act evidence against Leeper.

## C. *Conflicting Defenses*

■ Severance may also be required when co-defendants present or rely on mutually contradictory testimony. "[D]enial of a severance motion generally constitutes an abuse of discretion when 'the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Tarantino*, 846 F.2d at 1399 (quoting *Wright*, 783 F.2d at 1094; *Rhone v. United States*, 365 F.2d 980, 981 (D.C. Cir.1966)). Movants must demonstrate an "irreconcilable inconsistency" among the defenses offered, *United States v. Ehrlichman*, 546 F.2d 910, 929 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977), and must show more than "[t]he presence of some hostility" among them. *Wright*, 783 F.2d at 1094. The district court should, however, be particularly sensitive to severance motions in conspiracy cases "because of the danger that the guilt of one defendant may be unjustly transferred to another." *Sutton*, 801 F.2d at 1364.

■ Manner concedes that he and Leeper did not present antagonistic or directly contradictory versions of the facts at issue. Manner Br. at 19. Leeper's alibi, however improbable, raised no points in substantive conflict with Manner's defense, which asserted only that the prosecution had not proved its case against him beyond a reasonable doubt. Manner maintains, however, that the "fundamentally different ... concept" of his and Leeper's defenses renders them clearly antagonistic in character; consequently, Manner argues, "[t]he doctrine of antagonistic defenses ... should be extended to require severance" in this case. *Id.* at 18–19.

Although this argument is novel, we do not find it persuasive. We find no precedential support for this doctrinal expansion, and Manner has not produced any. The stringent standards for severance motions, coupled with our narrow scope of review, indicate that we should be extremely wary of expanding the "antagonistic defenses" prong of the severance doctrine.

Furthermore, we simply do not believe that Manner's and Leeper's defenses were antagonistic in character. Leeper's alibi/fabrication defense seeks to demonstrate that Jackson's testimony was not credible and, therefore, provided insufficient basis for the jury to find that Leeper was involved in the sale or conspiracy to sell on March 1–4. Had the jury believed Leeper's alibi, the defense would probably have redounded to Manner's benefit, at least with respect to the conspiracy charge. Leeper's defenses have little, if any, bearing on police testimony concerning the roadblock incident; consequently, we do not see how Leeper's defense conflicts with Manner's silence vis-a-vis the circumstances of his own arrest.

In sum, we conclude that the trial court properly refused to grant Manner's motion to sever.

## IV. MANNER'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

■ After his arrest but before trial, Manner moved to suppress the crack that the police recovered at the roadblock arrest. Manner contends that in denying his motion, the trial court improperly failed to consider the constitutionality of the roadblock. We disagree.

The district court found, as a matter of fact, that the police stopped Manner's car because of a traffic violation, not because of the roadblock. As a result, the court treated the constitutionality of the roadblock as not in issue and admitted the crack

as evidence. *United States v. Jackson,* Crim. No. 88–126, at 5, 1988 WL 59653 (D.D.C. May 27, 1988) (memorandum and order denying motion to suppress) [hereinafter cited as Ev.Mem.] (reprinted as Appendix to Brief for Appellee United States).

We review factual findings in criminal cases under the "clearly erroneous" standard; unless we are "left with the definite and firm conviction that a mistake has been committed," we cannot overturn the trial judge's finding. *Jackson v. United States,* 353 F.2d 862, 864–65 (D.C.Cir.1965). In concluding that Manner's car was stopped for a traffic violation, the trial judge relied on testimony by Detective Hinton, who stated that he decided to stop the vehicle for the reckless manner in which it was being operated, not for its attempt to avoid the roadblock. Ev.Mem. at 4; *see* M. Tr. at 58–59, 62–64. Manner argues that Hinton's testimony could not have been accurate because, as Hinton himself testified, another officer saw Manner's vehicle first, as it was backing away from the roadblock, and then called out to Hinton. M. Tr. at 6, 38; Tr. at 49. Manner implies that the other officer noticed the vehicle because it was pulling away from the roadblock. Manner Br. at 22. There is no evidence in the record, however, to support this conclusion. In addition, Manner notes that Jackson testified that when Manner, who was driving, saw the roadblock, he "threw the car in reverse." *Id.* (citing Tr. at 193). Although Jackson's account may be accurate, it does not bear on the police officers' original intent in stopping Manner's car.

We conclude that the trial judge had ample basis for his finding that the car was not stopped because of the roadblock. Consequently, we agree with his determination that there was no need to consider the roadblock's constitutionality or to suppress the physical evidence on that account.[9]

### V. CONCLUSION

Since we find that the trial court properly dismissed Manner's motions to sever and to suppress physical evidence, we uphold Manner's conviction. However, as noted in Part II, *supra,* we remand the record in Leeper's case to the district court for an on-the-record balancing of the probativeness to Leeper and the prejudicial effect on Leeper of the evidence of his later drug sale.

*It is so ordered.*

### ORDER

**PER CURIAM.**

In accordance with the opinion issued this day in the consolidated cases of *United States v. Manner,* No. 88–3169, and *United States v. Leeper,* No. 88–3170, it is

ORDERED by the court, on its own motion, that the consolidation of those two cases be vacated, and it is

FURTHER ORDERED that the record in the appeal of *United States v. Leeper,* No. 88–3170, be remanded to the United States District Court for the District of Columbia for further proceedings consistent with the opinion issued this day. Consistent with Local Rule 15(c), this court retains jurisdiction over *United States v. Leeper* while said proceedings occur. Upon completion of said proceedings, the Clerk of the United States District Court for the District of Columbia shall promptly transmit the record in *United States v. Leeper* back to this court.

---

**9.** We agree with the trial court's finding that Jackson abandoned the crack when he dropped the brown paper bag. "A determination of abandonment is a factual finding, which we review for clear error." *United States v. Brady,* 842 F.2d 1313, 1315–16 (D.C.Cir.1988). Hinton's and Jackson's testimony, M. Tr. at 28; Tr. at

196, provide support for this determination. Since warrantless searches of abandoned property do not violate the fourth amendment, *Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960), admitting the packets of crack into evidence did not infringe Manner's reasonable expectation of privacy.