946 F.2d 127
 292 U.S.App.D.C. 37
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES
v.
I.J. BROOKS, Sr., Appellant.
UNITED STATES
v.
I.J. BROOKS, Jr., Appellant.
UNITED STATES
v.
David E. GALES, III, Appellant.
 Nos. 91-3004, 91-3005 and 91-3006.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 18, 1991.
 
 Before BUCKLEY, D.H. GINSBURG and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals from judgments of conviction were considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. The court is satisfied that appropriate disposition of the appeals does not warrant a published opinion. See D.C.Cir.R. 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the judgments of conviction be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 I.J. Brooks, Sr., I.J. Brooks, Jr., and David Gales appeal from their convictions, after a joint trial before a jury, of various drug-related crimes. I.J. Brooks, Sr., was convicted of maintaining a place for storing and distributing a controlled substance, 21 U.S.C. § 856(a)(2), and use of and carrying a firearm in relation to drug trafficking, 18 U.S.C. § 924(c). I.J. Brooks, Jr., and David Gales were convicted of distribution of a mixture and substance containing a detectable amount of cocaine base, 21 U.S.C. § 841(a) & (b)(1)(c). Brooks, Jr., was also convicted of possession with intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base, 21 U.S.C. § 841(a) & (b)(1)(b)(iii). We affirm each of the convictions.
 
 
 5
 The events giving rise to the convictions took place on January 25, 1990. In the early evening, Gales approached Michael Quander, an undercover police officer, and offered to sell him some cocaine. Gales (and a co-defendant who did not participate in this appeal) took Officer Quander to 1649 11th Place, N.E., a house owned by Brooks, Sr. Officer Quander saw appellant Brooks, Jr., open the door and hand a ziplock bag containing drugs to the co-defendant, who gave the bag to Gales. Officer Quander paid Gales $50 in pre-marked bills; Gales gave the drugs to Quander and handed the cash to Brooks, Jr. After Officer Quander returned to his car, the undercover team arrested Gales.
 
 
 6
 Later that night, police returned to Brooks' house to execute a search warrant. Inside, they found Brooks, Sr., who had $170 on his person. In his bedroom they discovered $500, including one of the pre-marked bills, under a rug; $4,231 in cash in the closet; and a loaded Smith and Wesson .357 Magnum handgun in a file cabinet. Elsewhere in the house, the police found other money, ammunition, and drugs (cocaine and marijuana). Brooks, Jr., also lived in the house, and in his bedroom the police found $615 (including some of the pre-marked money), drugs and scales. While the search was taking place, Brooks, Jr., drove up in his Datsun 300ZX. He was identified by Officer Quander and arrested.
 
 
 7
 * Brooks, Jr., has two arguments. The first is that the trial court should have instructed the jury on his alibi defense, as his counsel requested. Brooks, Jr., testified that on January 25, 1990, he left the house at 5:55 p.m. to go to work. He admitted that sometimes he could get to his job in as little as two minutes. He introduced into evidence a time card, verified by the testimony of a co-worker, showing that he arrived at work at 6:08 p.m. Another co-worker testified that Brooks, Jr., was at work that evening. One officer began watching the house about 6:00 p.m. but did not see a drug transaction, which indicates that what Officer Quander saw occurred earlier. Officer Quander himself could not remember the exact time he bought drugs from Brooks, Jr. He testified at one point that the transaction took place between 6:00 p.m. and 6:15 p.m., and probably closer to 6:15 p.m. Thus the evidence left the matter in some doubt. Still, Brooks, Jr., was entitled to an alibi instruction. His theory, if believed, might have defeated the government's and had sufficient evidentiary support. United States v. Tarantino, 846 F.2d 1384, 1400 (D.C.Cir.1988); United States v. Mathis, 535 F.2d 1303, 1305 (D.C.Cir.1976).
 
 
 8
 The error, however, was harmless under the harmless-beyond-a-reasonable-doubt standard for constitutional errors in Chapman v. United States, 386 U.S. 18 (1967), and the rather less stringent test of Kotteakos v. United States, 328 U.S. 750 (1946) (see also Fed.R.Crim.P. 52(a)). The police found some of Officer Quander's pre-marked money in Brooks, Jr.'s bedroom. That evidence, together with the cocaine and scales found in his bedroom and Officer Quander's identification, leave no reasonable doubt that Brooks, Jr., would have been convicted even if the instruction had been given.
 
 
 9
 Brooks, Jr.'s second argument is that the trial court erred in allowing testimony about the car he was driving that night. There is nothing to this. A trial court's determination that evidence was admissible may be overturned only if there was grave abuse. United States v. Payne, 805 F.2d 1062, 1066 (D.C.Cir.1986). Brooks, Jr., was driving a six-year-old Datsun 300ZX. The prosecutor properly asked both Officer Quander and the defendant's alibi witness to describe the car to test each person's memory. The answers giving the make and model of his car did not suggest that its owner was living some high lifestyle as a result of drug dealing. The jury also learned that at the time of the offense, the car was six years old. The judge therefore did not err in concluding that the danger of undue prejudice to Brooks, Jr., did not substantially outweigh the probative value of the evidence. See Rules 403 and 404(b), Fed.R.Evid.
 
 II
 
 10
 Gales argues that he should have been tried separately from the others. Before the trial, the court rejected Gales's argument that the defendants had been improperly joined under Rule 8(b), Fed.R.Crim.P., and that separate trials should have been ordered pursuant to Rule 14, Fed.R.Crim.P. Neither ruling was in error.
 
 
 11
 Rule 8(b) required the government to show that "each defendant participated in the series of acts underlying each offense charged (though not necessarily in every act making up the series)." United States v. Halliman, 923 F.2d 873, 883 (D.C.Cir.1991). As Gales sees it, he was not involved in the offenses for which Brooks, Sr., was convicted. This misses the point. Distribution of drugs was an element of both of Brooks, Sr.'s offenses. See 21 U.S.C. § 856(a)(2); 18 U.S.C. § 924(c). Gales participated in the "series of acts" making up both violations. He brought Officer Quander to Brooks, Sr.'s house to buy drugs. That was sufficient to satisfy Rule 8(b).
 
 
 12
 Gales also thinks he was entitled to severance from the other defendants because the introduction of the weapon against Brooks, Sr., was unduly prejudicial to him. We find that the denial of severance under Rule 14 was not an abuse of discretion, and that Gales did not receive an unfair trial. United States v. Manner, 887 F.2d 317, 324 (D.C.Cir.1989). Reversal is proper when there is a clear disparity in the "weight, quantity or type" of evidence against the different defendants. Id. Here, no such disparity existed. The government's case against Gales was strong enough to convict on the distribution charge, and the jury instructions were adequate to enable the jury to compartmentalize the charges. Id.; see also Halliman, 923 F.2d at 884.
 
 III
 
 13
 Brooks, Sr., claims that all of the evidence found in his house should have been suppressed because the officers violated Rule 41(d), Fed.R.Crim.P., which requires the "officer taking property under the warrant" to give to the person from whose premises the property was taken "a copy of the warrant and a receipt for the property taken...." The search took place at 11:00 p.m.; the officers did not present the receipt and a copy of the warrant to Brooks, Sr., until the next morning, after he had spent the night in jail. Even if this had not been sufficiently prompt, it amounted only to a ministerial violation which did not affect the validity of the warrant. While Brooks, Sr., alleges (and the government denies) that the police, when they entered his house, used excessive force against him and his son, there is no basis for supposing that compliance with Rule 41(d) would have averted this. Rule 41(d) concerns what the officers must do after the search; Brooks, Sr.'s complaint is about what allegedly happened when they first entered the premises to begin the search. Brooks, Sr., therefore cannot bring himself within the dictum of United States v. Burke, 517 F.2d 377, 385-87 (2d Cir.1975), that a violation of Rule 41(d) might justify suppression if the search "would not have been so abrasive" had the rule been followed.
 
 
 14
 Brooks, Sr., also argues that the officers executing the search of his home violated 18 U.S.C. § 3109, which permits officers to "break open" doors in order to execute a search warrant when, after announcing their "authority and purpose," they are refused admittance. The argument was never made in the district court, and the district court's failure to suppress the evidence on those grounds was not "plain error." See Rule 52(b), Fed.R.Crim.P.; see also United States v. Pabon, 387 F.2d 351 (2d Cir.1967).
 
 
 15
 Affirmed.