990 F.2d 1378
 301 U.S.App.D.C. 108
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Joe Louis THOMAS, Appellant
 No. 91-3263.
 United States Court of Appeals, District of Columbia Circuit.
 March 19, 1993.
 
 Before MIKVA, Chief Judge, and WILLIAMS and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal from the judgment of conviction of Joe Louis Thomas was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. Upon full review of the issues presented, the court is satisfied that appropriate disposition of the case does not warrant a published opinion. See D.C.Cir.Rule 14(c). It is accordingly
 
 
 2
 ORDERED AND ADJUDGED, for the reasons stated in the accompanying memorandum, that the judgment from which this appeal has been taken is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Mr. Thomas was found guilty following a jury trial of possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861. Mr. Thomas appeals his conviction on the grounds that 1) there was insufficient evidence to support the conviction, 2) the jury instructions improperly shifted the burden of proof to the defendant, and 3) the Rule 404(b) evidence of prior possession of firearms was improperly admitted. Although the evidence against Mr. Thomas is not overwhelming, a reasonable juror could certainly have concluded that Mr. Thomas had access to and control over the locked trunk in which the unregistered firearm was located. Moreover, the jury instructions did not shift the burden of proof to the defendant; nor did the court abuse its discretion by deciding to admit the Rule 404(b) evidence. We therefore affirm Mr. Thomas' conviction.
 
 
 5
 On April 24, 1991, a search warrant was executed at Mr. Thomas' apartment. Agent Bouchard testified that Mr. Thomas refused to open the door of the apartment, and when the officers began breaking through the door of the apartment, Mr. Thomas and his mother tried to hold the door shut. Once the officers made it inside the apartment, Mr. Thomas was seen "going toward" the couch. The police stopped Mr. Thomas before he reached the couch, and searched the couch for evidence of contraband or weapons. Underneath the cushions of the couch, a 9 mm. pistol and a small vial of cocaine were hidden. The officers also recovered ammunition in the living room, and Agent Gunderson found a safe in the bedroom closet which he forced open. Inside the safe there was a disassembled sawed-off shotgun, ammunition for the shot gun, a .22 caliber pistol, 9 mm. ammunition, a small bottle with narcotics residue, black gloves, and a clip for a semi-automatic weapon. Agent Gunderson asked Mr. Thomas and his mother whether either of them owned the safe, but there was no testimony as to what, if any, answers they gave. Mr. Thomas was also asked whether he knew the combination of the safe; he replied that he did not.
 
 
 6
 There were several items of women's clothing in the bedroom closet where the safe was found. Elsewhere in the bedroom there were several papers bearing Mr. Thomas' name, as well as letters addressed to Mr. Thomas in the dresser. In addition, the officers recovered from the bedroom dresser two photographs of Mr. Thomas; one of the photographs showed Mr. Thomas with two other unidentified young males holding firearms. One of the guns shown in the photo appeared identical to the semi-automatic weapon found in the safe.
 
 
 7
 Mr. Thomas was charged in a two-count indictment alleging possession of an unregistered sawed-off shotgun and simple possession of crack cocaine. At trial, the court admitted into evidence the photo of the defendant with the firearms as well as the firearms that were found on the premises. Mr. Thomas did not testify or present any evidence at trial.
 
 
 8
 After the close of evidence, the judge instructed the jury that although there was evidence that another person may have occupied the apartment with Mr. Thomas (namely, Mr. Thomas' mother), that evidence was not relevant "unless you find that the other person was the only one who had actual or constructive possession of the drugs and sawed-off shotgun described in the indictment." The jury found Mr. Thomas guilty of possession of a sawed-off shotgun but not guilty of cocaine possession.
 
 
 9
 Mr. Thomas' primary argument is that the court should have entered a judgment of acquittal at the close of evidence because the government failed to prove that he ever had actual possession of the shotgun or had access to or control over the contents of the safe. Mr. Thomas asserts that, at most, the photograph admitted into evidence proved only that he "possessed for an instant, at an unknown time and place, a gun that looked like the legal .22 caliber revolver found in the safe." Mr. Thomas also suggests that the jury could not infer Mr. Thomas' access to the safe based on the 9 mm. gun found in the couch. In Mr. Thomas' view, it is pure speculation that Mr. Thomas had access to the safe simply because ammunition for the 9 mm. gun found in the couch was in the safe. In addition, Mr. Thomas points out that there was no evidence that he actually slept in the bedroom or knew the combination of the safe. Cf. United States v. Anderson, 881 F.2d 1128 (D.C.Cir.1989) (sufficient evidence to support conviction for possession of firearm where the defendant lived in and used the bedroom where the shotgun was found). In sum, Mr. Thomas believes that the government failed to establish by direct evidence "some action, some word, or some conduct that link[ed] him to the [firearm]," see United States v. Pardo, 636 F.2d 535, 549 (D.C.Cir.1980), and he therefore urges this Court to reverse his conviction.
 
 
 10
 It is axiomatic that this Court must affirm Mr. Thomas' conviction if "any reasonable trier of fact could have found the essential elements beyond a reasonable doubt." United States v. Poston, 902 F.2d 90, 94 (D.C.Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in Jackson ). It is equally well settled that this Court must "view the evidence in the light most favorable to the government, allowing the government the benefit of all reasonable inferences that may be drawn from the evidence, and permitting the jury to determine the weight and the credibility of the evidence." United States v. Sutton, 801 F.2d 1346, 1358 (D.C.Cir.1986).
 
 
 11
 Viewing the evidence under this highly deferential standard, there appears to be sufficient evidence to support Mr. Thomas' conviction. Although "mere proximity" to contraband is not enough to support a conviction for constructive possession, see Pardo, 636 F.2d at 549, the government is not required to establish knowledge of and control over the contraband by direct evidence. See United States v. Foster, 783 F.2d 1087, 1088 (D.C.Cir.1986) (when reviewing motion for judgment of acquittal no distinction should be drawn between circumstantial and direct evidence).
 
 
 12
 The circumstantial evidence in this case could have convinced a reasonable juror beyond a reasonable doubt that Mr. Thomas had access to and control over the gun in the safe. First, one of the guns held by Mr. Thomas in the photograph appeared to be identical to one of the guns found in the safe, thus implying access to and control over the safe. Second, Mr. Thomas clearly had access to, and appeared ready to assert control over, the gun under the couch cushion--a gun suitable for the ammunition stored in the safe. Third, Mr. Thomas' evasive acts, including forcing the door shut when the officers tried to enter, could support an inference that Mr. Thomas knew of the presence of the contraband throughout the apartment. See United States v. Hernandez, 780 F.2d 113, 117 (D.C.Cir.1986) (evasive conduct by the accused in response to police scrutiny may be considered as circumstantial evidence of constructive possession); United States v. James, 764 F.2d 885, 889 (D.C.Cir.1985) (defendant's proximity to contraband and efforts to defeat the police search demonstrated consciousness of guilt). Fourth, although the evidence in this case falls a bit short of that in Anderson, where the defendant slept in the bedroom where the gun was found in the middle of the floor, the evidence clearly showed that Mr. Thomas used the bedroom and stored personal belongings there. See Anderson, 881 F.2d at 1141. Taking all of this circumstantial evidence together, we find sufficient evidence to support Mr. Thomas' conviction.
 
 
 13
 Mr. Thomas next argues that the jury instructions delivered by the court after the close of evidence improperly shifted the burden of proof to the defendant. Mr. Thomas believes that the court's statement to the jury that any evidence of joint occupancy was not relevant "unless you find that the other person was the only one who had actual or constructive possession of the drugs and sawed-off shotgun," prevented the jury from considering whether the evidence of joint occupancy simply raised a reasonable doubt. In Mr. Thomas' view, the instruction required the jury to totally disregard the evidence unless it proved that appellant's mother, and not he, was guilty.
 
 
 14
 When reviewing jury instructions we consider not just the challenged language, but the instruction as a whole. Estelle v. McGuire, 112 S.Ct. 475, 482 (1991). Here, whether or not the challenged phrase is a correct statement of the law, the jury instructions as a whole do not suggest that the burden of proof was shifted to the defendant. Quite to the contrary, the court emphasized in the instruction that the burden did not, and could not, shift during the trial, and that "the law does not require the defendant to produce any evidence." Moreover, as explained in United States v. Merlos, even if the jury instruction when read as a whole, violated the constitution, this Court would not reverse the conviction if the error was harmless beyond a reasonable doubt. See United States v. Merlos, No. 91-3213, slip op. at 6 (D.C.Cir. Feb. 12, 1993). This determination is made by examining the entire record and considering "whether the error meant the difference between acquittal and conviction." Id at 7. Although the evidence was not overwhelming in this case, we find it easy to conclude that the allegedly erroneous jury instruction did not mean the difference between acquittal and conviction.
 
 
 15
 Finally, Mr. Thomas argues that the district court abused its discretion by admitting evidence that he had previously possessed firearms. See United States v. Manner, 887 F.2d 317, 321 (D.C.Cir.1989), cert. denied, 493 U.S. 1062 (1990) (trial court's decision to admit other crimes evidence is reviewed only for an abuse of discretion). Mr. Thomas contends that the evidence of prior possession of presumably legal firearms was not probative of whether he knowingly possessed an unregistered firearm; and even if the evidence of prior possession of firearms had probative value, the evidence should have been excluded because of its overwhelming potential for prejudice. We find neither argument persuasive.
 
 
 16
 The only contested issue at trial was whether Mr. Thomas had the requisite knowledge to constructively possess the sawed-off shotgun seized by the police--not whether he had the specific intent to possess an unregistered firearm. Clearly, the prior possession of firearms tended to make it more probable that Mr. Thomas constructively possessed the sawed-off shotgun, and tended to negate the proffered defense that Mr. Thomas did not know of the contents of the safe. Moreover, the fact that the prior "bad acts" were not identical to the charge of possession of an unregistered firearm is irrelevant; "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense." United States v. DeLoach, 654 F.2d 763, 769 (D.C.Cir.1980), cert. denied, 450 U.S. 933 (1981).
 
 
 17
 With respect to Mr. Thomas' claim that the probative value of the evidence was outweighed by its prejudicial effect, we note that Mr. Thomas' argument is hampered by the failure of his trial counsel to submit a limiting instruction when invited to do so by the trial court. See United States v. McDowell, 762 F.2d 1072, 1076 (D.C.Cir.1980) (failure of the defendant's counsel to request limiting instructions relevant in prejudice analysis under Rule 404(b)).
 
 
 18
 In any event, the district court did not abuse its discretion in its application of Rule 403. Rule 403 excludes evidence only where the probative value " 'is substantially outweighed by the danger of unfair prejudice.' " United States v. Day, 591 F.2d 861, 878 (D.C.Cir.1978) (quoting Fed.R.Crim.P. 403, with emphasis added by the court). In this case, the evidence of Mr. Thomas' prior possession of firearms was crucial to the government's effort to establish Mr. Thomas' connection to the safe. See United States v. Lavelle, 751 F.2d 1266, 1277 (D.C.Cir.1985) (prosecution's need for the evidence is important factor in balancing test). And although there was undoubtedly some prejudicial effect of the evidence, Rule 403 "tilts, as do the rules as a whole, toward admission of evidence in close cases." United States v. Moore, 732 F.2d 983, 989 (D.C.Cir.1984). Since we cannot say that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, we conclude that the trial court's decision to admit the evidence of past possession of firearms was not an abuse of discretion.
 
 
 19
 For the foregoing reasons, Mr. Thomas' conviction is affirmed.